### FRANCESCHI et al v. MERCADO.

(Circuit Court of Appeals, First Circuit. December 21, 1920.)

#### No. 1418.

1. **Bankruptcy 372—Special order of abandonment of proceeding was necessary and must be made in same case.**

   Under Law of Civil Procedure of Porto Rico of 1886, arts. 410, 411, 412, 415, and 419, a special order of abandonment of bankruptcy proceedings was necessary, which order had to be made in the same proceeding, and not in another distinct action.

2. **Bankruptcy 372—Proceeding not abandoned or extinguished for failure to prosecute when due to failure of court.**

   Under the law in force in Porto Rico in 1888 requiring the judge having cognizance of a bankruptcy proceeding to order a seizure of the property, name a receiver and trustee, and set a day for the meeting of creditors when making the order of adjudication and a royal decree of October 27, 1885, requiring the court to cite the parties to appear for the purpose of agreeing to proceed under a law which had recently gone into effect, where the court, after adjudging a partnership bankrupt and ordering a seizure of its property and appointing a receiver, never set a day for the appearance of the parties to choose the procedure, the proceeding was not abandoned or extinguished by the failure to prosecute it thereafter.

3. **Bankruptcy 122—Court should have set new day for meeting of creditors when meeting not had.**

   Though the law in force in Porto Rico in 1888 only provided for two cases in which a meeting of creditors of a bankrupt was not held and made no provision for a third or subsequent meeting, the court having

cognizance of the proceeding was charged with the duty of setting a new day until the meeting was held.

4. **Bankruptcy 51—Bankrupt partnership held incapacitated to exercise acts of ownership and heirs incapable to sue to set aside foreclosure.**

Where a partnership was adjudged a bankrupt under the laws of Porto Rico in 1888, and its property seized by receiver named by the court pending the appointment of a trustee at a meeting of creditors, the property was in custody of the law when subsequently levied on and sold at public auction to pay mortgagees, and the partners were incapacitated to perform acts of ownership, and could not recover the property, and their heirs had no legal capacity to sue to set aside the foreclosure and recover the property.

5. **Appeal and error 78(4)—Judgment dismissing suit for want of capacity of plaintiffs is final and appealable.**

A judgment of the Supreme Court of Porto Rico dismissing a suit for want of capacity in plaintiffs to prosecute it was a final judgment from which an appeal would lie to the Circuit Court of Appeals.

6. **Appeal and error 165—Right to appeal not waived by taking steps to obviate objection to maintenance and bringing new suit.**

The right of heirs of mortgagors to appeal from a decree, dismissing their suit to set aside the foreclosure of the mortgage and recover the property, for want of capacity to sue, because of bankruptcy proceedings, was not waived by obtaining an order extinguishing the bankruptcy proceedings and bringing a new suit for the same cause, as the order of extinguishment may not have been rightfully entered, and the second suit may be open to defenses not available in the first suit.

Appeal from the Supreme Court of Porto Rico.

Suit by Alejandro Franceschi and others against Mario Mercado e Hijos. From a decree of the Supreme Court of Porto Rico reversing a decree of the District Court in favor of plaintiffs, they appeal. Affirmed.

The opinion of the Supreme Court of Porto Rico, delivered by Mr. Justice Aldrey, was as follows:

In the year 1884 the partnership of Antonsanti & Franceschi, composed of Francisco Antonsanti and J. Angel Franceschi and doing business in the town of Guayanilla, mortgaged their "Rufina" plantation to Dionisio Torres Figueroa to secure the payment to him of $28,000 in the currency of that period, the last installment falling due in 1888.

A year later the said partnership filed a petition in bankruptcy, and on June 12, 1885, was adjudged a bankrupt by the court of first instance of Ponce, which ordered the judicial seizure of all the property, books, documents, and papers of the bankrupt firm, appointing Felix Tristani receiver, and set a day for the meeting of the creditors, at which meeting, pursuant to the law, the trustees in bankruptcy should be appointed. The referee and receiver appointed assumed charge of their offices and the latter took possession of the property of the bankrupt firm, including the Rufina plantation.

In the year 1895 the heirs of Dionisio Torres Figueroa brought suit to recover the amount owed on the mortgage by Antonsanti & Franceschi and summoned the receiver in bankruptcy, Felix Tristani. who, as such receiver, was in possession of the property. In that suit the Rufina property was ordered to be sold to pay the said heirs, and was sold at public auction to Mario Mercado as attorney in fact of Jose Trujillo Piza. Later the firm of Trujillo & Mercado became the owners of the property, and it now belongs to the firm of Mario Mercado & Sons.

Twenty years later the heirs of the two partners who composed the bankrupt firm brought suit to recover the said property together with the profits accruing from the time it was sold at public auction, amounting, as they al-

lege, to some $400,000. They based their suit on the fact that the action which terminated in said sale was brought against the receiver in bankruptcy, Felix Tristani, who was not the lawful representative of the defendant firm. This action was disposed of by a judgment of the District Court of Ponce, which held that the suit brought by the heirs at Dionisio Torres Figueroa, the sale of the Rufina property, its record in the registry of property, and all subsequent records made were null and void, and ordered that the property be restored to the plaintiffs, but refused to adjudge that the profits accruing therefrom should be accounted for. The appeal now under consideration was taken by Mario Mercado & Sons from that judgment.

The first ground assigned by the appellants for the reversal of the judgment appealed from is that the lower court erred in holding that the plaintiffs had legal capacity to sue.

Although the appellants argue at length the proposition that, inasmuch as the firm of Antonsanti & Franceschi had been adjudged bankrupt the partners were incapacitated to manage the affairs of the partnership and to perform acts of ownership and that they never became and could not become capacitated, yet this is not the real issue in the case, for the plaintiffs neither allege nor claim that their parents were rehabilitated in the bankruptcy proceedings but that the petition became ineffective through failure to prosecute the bankruptcy proceedings since 1888, and that therefore the incapacity of their parents was removed, for which reasons they can sue for the Rufina property, as the heirs. In opposition to these averments by the appellees, the appellants contend:

(a) That it has not been proved that the bankruptcy proceedings were abandoned since November, 1888, or any other date prior to the institution of the foreclosure proceeding.

(b) That it has been shown that the bankruptcy proceeding was being prosecuted when the foreclosure proceeding was initiated.

(c) That a special order of abatement was necessary, that such order was never made by the court, and that it would have had to be made in the bankruptcy proceeding itself.

(d) That such order of abatement could not be made.

(e) That such abatement does not produce rehabilitation.

In order to dispose of these questions we must first set forth some facts which were shown from the admissions and the evidence in this action.

For different reasons the meeting of creditors called by the court at which the trustees in bankruptcy were to be appointed was not held on any of the three occasions set therefor, the last meeting having been set for May 1, 1886, This being the state of facts, and certain property belonging to the bankrupt estate having been sold to meet the expenses of the proceeding, the bankrupts moved to set aside such sales, and on February 18, 1888, the court granted a hearing on the motion with the understanding that when it had been disposed of a meeting of the bankrupts and the creditors should be convened in order to agree upon the procedure to be followed in the future. On January 1, 1886, a new law of procedure had gone into effect, and the royal decree of October 27, 1885, required the courts to call a meeting of the parties for the purpose of adopting a unanimous agreement in case they desired that the cases pending should be governed by the new law. The motion to set aside the sales was overruled on March 3, 1888, but no day was set for the meeting of the parties. On February 20, 1886, acting on the motion of the bankrupts that a new day be set for the meeting, the court decided that their motion should be disposed of when the parties appeared to elect the procedure to be followed.

By that time some of the personal property had been sold, as stated, the properties Faro and Colombano had been eliminated from the bankrupt estate by foreclosure proceedings in 1885, and the Rufina property, which was the only property remaining, was mortgaged. In point of fact, the junior mortgagees and the general creditors could not collect their claims, since all the real property had been taken from the estate, and this the plaintiffs acknowledge in the fourteenth count of the first complaint filed by them in this action.

No steps were taken in the bankruptcy proceeding subsequent to 1888, although the Rufina property continued in the possession of the receiver Felix Tristani until the year 1895, when it was attached and seized in the action brought by the heirs of Dionisio Torres.

The parties discuss at length the question of whether all of the record in the bankruptcy proceeding was produced at the trial, since the clerk of the court in which the record was filed testified that there was besides a mass of records which were not indexed, and that, although they relate to criminal matters, he could not swear that there were not some civil records among them, also regarding whether it is to be understood that, by reason of the continuation of the property Rufina in the possession of the receiver in bankruptcy until 1895, the bankruptcy proceeding was being prosecuted when the foreclosure proceeding against the Rufina property was instituted. We are of the opinion, however, that the fundamental issues are not these, but whether, considering that the last act approved was in 1888, it can be concluded in this case that the petition in the bankruptcy proceeding became ineffective four years later, and also that for that reason the incapacity of the partners of the firm which was adjudged bankrupt disappeared.

[1] According to article 410 of the Law of Civil Procedure, which went into effect in 1886, all actions at first instance shall be extinguished if not prosecuted within four years, unless (article 411) due to force majeure or to any other cause independent of the will of the parties, and the clerks (article 412) should give notice in order that the proper order may be officially issued. If the records were in the clerk's office, as was the case with the bankruptcy proceeding, since it has not been shown that they were filed, a special order of abandonment was necessary according to articles 412 and 419, which order had to be made in the same proceeding, and not in another distinct action, because a rehearing might be requested (article 415), because it affected the parties to the same, and because it produced the effect of terminating the action. 2 Manresa, Commentaries on the Law of Civil Procedure, pp. 274, 275. Judgments of the Supreme Court of Spain of April 3, 1903, 95 J. C. 152.

[2] But although the plaintiff appellees may be right in their contention that the abandonment of the bankruptcy proceeding could be declared in this action, to which the bankruptcy creditors are not parties, nevertheless such proceeding could not be held to be abandoned because the failure to prosecute was due to a cause independent of the will of the parties, inasmuch as the royal decree of October 27, 1885, charged the courts with the duty of citing the parties to appear to make their choice of procedure, and the court having jurisdiction of the bankruptcy proceeding never set a day therefor; this being the cause of the suspension of the proceeding as shown by the fact that the setting of another day for the meeting of the creditors was refused until after the said appearance for the election of procedure. Moreover, the judge having cognizance of said proceeding was required by article 1044 of the Code of Commerce of 1829, in force at the time, to order the seizure of the property, books, papers, and documents, to name a receiver and trustee in bankruptcy, and to set a day for the meeting of creditors, when making the order of adjudication of bankruptcy, which order the court made pursuant to the provisions of article 1028, although the bankrupts asked for a rehearing. These formalities are of such a nature that, being imposed upon the court by law, they do not cause the extinction of the proceedings if the action were suspended. Therefore in a case of bankruptcy in which, like the present, the first meeting of creditors, at which trustees were to be appointed, was pending, the Supreme Court of Spain held that, according to the text and spirit of article 412 of the Code of Civil Procedure, the cause of the abandonment must be chargeable to the negligence of the parties to the action, for which reason, as also held by this court and alleged in support of the appeal, the conditions in support of the extinction of the proceeding do not hold in regard to the general property dependent upon the acts which have to be performed officially by process of law in the collective interests of the persons to whom the estate of inheritance, bankruptcy, or insolvency may belong, and it is therefore clear that in a case of bankruptcy, the action being ex-

·clusively confided to the court, although its exercise be not demanded by any of the parties, as well as the adoption of adequate means to secure the property of the bankrupt and to cite the creditors until the trustees who are to represent the collectivity are appointed at the first meeting held, there are no lawful grounds for attributing the abandonment to those who are entitled to await the citation, or, consequently, to hold that the proceeding has been extinguished to their prejudice. 96 Civ. Jur. 822.

[3] The fact that the judge complied with the requirements by calling the meeting on three occasions and that the law only provides for two cases in which the meeting was not held and makes no provision for a third or subsequent meeting is no answer to the foregoing, for, since it is the aim of the law that the meeting of creditors shall be held as soon as possible, and the court having cognizance of the bankruptcy proceeding is charged with that duty, it is to be supposed that, if for any reason the meetings should not be held, the judge is required to set a new day therefor until it is held.

There is also discussion as to whether the extinction of the proceeding carries with it the rehabilitation of the bankrupts, but we need not consider that question here, since, as there was no extinction, it is not necessary to determine whether it produced rehabilitation.

[4] By the adjudication of bankruptcy of Antonsanti & Franceschi their property was seized by the receiver named by the court for that purpose, as required by law, pending the appointment of the trustee in bankruptcy at the first meeting of creditors, and from the time of such seizure the property of the bankrupts was in custodia legis, and was so considered by all, and the property "Rufina" so remained until 10 years later, when it was levied on and sold at public auction to pay the mortgagees. Moreover, Antonsanti & Franceschi could not recover that property, because they were incapacitated to perform acts of ownership and because the property was in the custody of the court, and their heirs as such cannot now claim what their predecessors in interest had no right to demand. The demurrer by the defendants that the plaintiffs had no legal capacity to sue should have been sustained.

In view of this conclusion we need not consider the other questions raised, and the judgment appealed from should be reversed on said ground.

Asa P. French, of Boston, Mass. (Frank Antonsanti and José Tous Soto, both of San Juan, Porto Rico, on the brief, and José R. F. Savage, of San Juan, Porto Rico, of counsel), for appellants.

Hollis R. Bailey, of Boston, Mass., and Jose A. Poventud, of Ponce, Porto Rico (Antonio Castro, of Ponce, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

PER CURIAM. [5, 6] We think the motion to dismiss the appeal should be denied for the reason that the judgment of the Supreme Court of Porto Rico dismissing the suit for want of capacity in the plaintiffs to prosecute it was a final judgment from which an appeal would lie to this court. We also think the right to prosecute the appeal was not waived, even though the plaintiffs, appellants, after taking the appeal, may have applied to the District Court of Ponce and obtained an order extinguishing the bankruptcy proceeding for want of prosecution and have since brought a second suit against the defendants, appellees, for the same cause, in which they allege that the order of extinguishment in the bankruptcy proceeding restored their capacity to sue: (1) Because the order extinguishing the bankruptcy proceeding may not have been rightfully entered; and (2) because the prose-

cution of the second suit may be open to defenses which could not be availed of in the present suit.

Furthermore, a careful study of the record, of the opinions of the District and Supreme Courts, and of the extended arguments and briefs of counsel convinces us that the conclusion reached by the Supreme Court on the question of the legal capacity of the plaintiffs, the appellants, to prosecute the suit and the subsidiary questions relating thereto which it passed upon was right, and that, in view of the careful and painstaking way in which the matter was considered by that court, nothing would be added by a restatement of the case and a discussion of the points decided.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellees.